IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DELARIAN ROBINSON,
       Petitioner,

vs.                                   Case No. 3:09cv17/LAC/EMT

KENNETH S. TUCKER,[1]
       Respondent.
_____/

## ORDER and REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (doc. 1). Respondent filed an answer and relevant portions of the state court record (doc. 15). Petitioner filed a reply and supplemental reply (docs. 20, 26).

The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are undisputed and established by the state court record (*see* doc. 15, Exhibits).[2] Petitioner was charged in the Circuit Court in and for Escambia County, Florida, with robbery with a weapon (Ex. A). Following a jury trial on

---

[1] Kenneth S. Tucker succeeded Edwin G. B as Secretary for the Department of Corrections, and is automatically substituted as Respondent. *See* Fed. R. Civ. P. 25(d)(1).

[2] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 15). If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

August 22, 2003, Petitioner was convicted of robbery without a weapon (Exs. C, D).  On September 22, 2003, he was sentenced as a habitual felony offender and a prison releasee reoffender to a term of twenty-five (25) years in prison, with a mandatory minimum of fifteen (15) years, with pre-sentence credit of 324 days (Exs. E, F).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D03-4183 (Ex. G).  The First DCA affirmed the judgment per curiam without written opinion on December 10, 2004, with the mandate issuing December 28, 2004 (Ex. K).  Robinson v. State, 888 So. 2d 628 (Fla. 1st DCA 2004) (Table).  Petitioner did not seek further review.

On February 2, 2005, Petitioner filed a pro se motion for reduction or modification of sentence, pursuant to Rule 3.800(c) of the Florida Rules of Criminal Procedure (Ex. L).  The state circuit court denied the motion on February 15, 2005 (id.).

On April 26, 2005, Petitioner filed a pro se motion to correct illegal sentence, pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure (Ex. M).  The state circuit court denied the motion on September 22, 2005 (Ex. N).  Petitioner appealed the decision to the First DCA, Case No. 1D05-5631 (Ex. P).  The First DCA affirmed the judgment per curiam without written opinion on March 28, 2006, with the mandate issuing April 25, 2006 (id.).  Robinson v. State, 925 So. 2d 316 (Fla. 1st DCA 2006) (Table).

On April 20, 2006, Petitioner filed a petition for writ of habeas corpus in the First DCA alleging ineffective assistance of appellate counsel, Case No. 1D06-2001 (Ex. Q).  The First DCA denied the petition on the merits on May 23, 2006.  Robinson v. State, 930 So. 2d 776 (Fla. 1st DCA 2006).

On December 27, 2006, Petitioner filed a pro se motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. S).  The state circuit court summarily denied the motion on May 8, 2007 (Ex. T).  Petitioner appealed the decision to the First DCA, Case No. 1D07-2986.  On March 13, 2008, the First DCA affirmed the decision per curiam without written opinion (Ex. X).  Robinson v. State, 977 So. 2d 584 (Fla. 1st DCA 2008) (Table).  The First DCA issued the mandate on April 8, 2008, the same day the appellate court received Petitioner's

motion for rehearing (*see* doc. 1 at 5; doc. 20, Ex. A).[3]  The First DCA denied the motion for rehearing on June 13, 2008 (*id.*).  Respondent's recitation of the procedural history of this case does not include the motion for rehearing (*see* doc. 15 at 5–6).

On August 7, 2008, Petitioner filed another Rule 3.800(a) motion to correct illegal sentence, arguing that the fines and costs ordered by the court exceeded the statutory maximum sentence (Ex. Y).  On November 26, 2008, the state circuit court granted the motion and directed the clerk of court to prepare a corrected judgment and sentence striking any fines and costs imposed (*id.*).  Petitioner filed the instant federal habeas action on January 14, 2009 (doc. 1).

Respondent argues the petition is untimely, because it was not filed within the one-year limitations period provided in 28 U.S.C. § 2244(d) (doc. 15 at 2–10).  Petitioner contends Respondent's argument is flawed in two respects.  First, Respondent's calculation of the federal limitations period does not include tolling for the period during which Petitioner's motion for rehearing was pending in the First DCA during the Rule 3.850 appeal proceedings (doc. 1 at 5; doc. 20 at 1–3).[4]  Second, the issuance of a corrected judgment and sentence upon the state court's granting his second Rule 3.800(a) motion, on November 26, 2008, restarted the federal limitations trigger, under § 2244(d)(1)(A) and <u>Ferreira v. Sec'y, Dep't of Corr.</u>, 494 F.3d 1286, 1293 (11th Cir. 2007) (*id.* at 3–7).

Upon review of the record, the undersigned concludes that even if the original judgment and sentence triggered the federal limitations period, the federal petition was timely filed.  Assuming arguendo that the corrected judgment and sentence did not restart the federal limitations period, Petitioner's original judgment and sentence became final on March 11, 2005, ninety (90) days after the First DCA's affirmance on direct appeal on December 10, 2004.[5]  Petitioner's statute of limitations began to run on March 12, 2005, the day after the 90-day period expired.  *See*

---

[3] The fact that the First DCA received the motion for rehearing on April 8, 2008, means it was filed sooner, pursuant to the "mailbox rule."

[4] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

[5] Pursuant to Rule 6 of the Federal Rules of Civil Procedure, the day of the event that triggers the time period is excluded from the calculation, and the last day of the period is included, so the 90-day period expired on March 11, 2005.

Wainwright v. Sec'y, Dep't of Corr., 537 F.3d 1282, 1283–84 (11th Cir. 2007) (citing Fed. R. Civ. P. 6(a)); Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001) (Rule 6 applies to calculation of one-year statute of limitations under AEDPA).  Petitioner filed his first tolling motion, a Rule 3.800(a) motion, on April 26, 2005, after forty-five (45) days of the federal limitations period ran.[6]  While that motion was pending, Petitioner filed a state habeas petition alleging ineffective assistance of appellate counsel, which was another tolling application.  That tolling application was pending until May 23, 2006.  The federal limitations period then ran 217 days until Petitioner filed a Rule 3.850 motion, on December 27, 2006.  That motion was pending until June 13, 2008, when the First DCA denied Petitioner's motion for rehearing.  See Nix v. Sec'y for Dep't of Corr., 393 F.3d 1235, 1237 (11th Cir. 2004) ("[A] motion for state court rehearing falls within the category of 'State post-conviction or other collateral review'" and, therefore, tolls the statute of limitations).[7] The federal limitations period then ran fifty-four (54) days until Petitioner filed his second Rule 3.800(a) motion, on August 7, 2008.  That motion was pending until November 26, 2008, the date the state circuit court rendered its decision granting the motion.  The federal limitations period then ran forty-eight (48) days until Petitioner filed his federal habeas petition, on January 14, 2009.  The habeas petition was thus timely by one day ($45 + 217 + 54 + 48 = 364$ days).  Having concluded that the petition was timely filed, the court will determine whether Petitioner has established entitlement to relief.

II.     STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.  In relevant part, § 2254(d) provides:

(d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect

---

[6] Petitioner's previously filed motion for reduction or modification of sentence, filed pursuant to Rule 3.800(c), did not qualify as a tolling motion.  See Alexander v. Sec'y Dep't of Corr., 523 F.3d 1291, 1297–98 (11th Cir. 2008); Baker v. McNeil, No. 09-14438, 2011 WL 3612035 , at *2–3 (11th Cir. Aug. 17, 2011) (unpublished).

[7] There is no indication the motion for rehearing was denied as untimely or was otherwise not "properly filed" for purposes of § 2244(d)(2).

to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (2006).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S.  Ct. 1495, 146 L. Ed. 2d 389 (2000).[8]  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id., 529 U.S. at 412–13 (O'Connor, J., concurring).  The federal habeas court "determining whether [it] should overturn the state courts' rejection of the claim at issue" should "review the highest state court decision disposing of the claim."  Harvey v. Warden, Union Corr. Inst., 629 F.3d 1228, 1237 (11th Cir. 2011); see Knowles v. Mirzayance, — U.S.—, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251 (2009).

Employing the Williams framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its

---

[8] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. Dicta in opinions is not controlling. Thaler v. Haynes, — U.S. —, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); Bowles v. Sec'y for Dep't of Corr., 608 F.3d 1313, 1315 (11th Cir. 2010). A federal court of appeals decision cannot clearly establish federal law for § 2254 purposes, even if its holding is directly on point. Bowles, 608 F.3d at 1316 (citing Renico v. Lett, — U.S. —, 130 S. Ct. 1855, 1866, 176 L. Ed. 2d 678 (2010)).

After identifying the governing legal principle, the court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. To be entitled to deference, the state court decision need not cite to Supreme Court case law. As the Supreme Court clarified: "Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. See Panetti v. Quarterman, 551 U.S. 930, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court must then determine whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. Williams, 529 U.S. at 409; see Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir.

2001).   A state court may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. Knowles, 129 S. Ct. at 1419.   Notably, even a state court's incorrect or erroneous application of clearly established law will not warrant federal habeas relief unless it is also objectively unreasonable.   *See* Schriro v. Landrigan, 550 U.S. 465, 473, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."); Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87, 178 L. Ed. 2d 624 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.   *See* Gill v. Mecusker,  633 F.3d 1272, 1287 (11th Cir. 2011) (citing Harrington, 131 S. Ct. at 786).   The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.   *See* Harrington, 131 S. Ct. at 786; *see also* Gill, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(2).   As with the "unreasonable application" clause, the Supreme Court applies an objective test.   Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003)

(holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See* Gill, 633 F.3d at 1292.

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see, e.g.,* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").  Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(2) interact in the context of fact-based challenges to state court adjudications.  Cave v. Sec'y for Dep't of Corr., — F.3d. —, 2011 WL 1365021 (11th Cir. Apr. 12, 2011).  However, in a recent Eleventh Circuit decision the court declined to grant habeas relief under § 2254(d)(2), in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision."  Gill, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See* Panetti, 551 U.S. at 953.  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).  "If this standard is difficult to meet, that is because it was meant to be."  Harrington, 131 S. Ct. at 786.

III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[9] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the

---

[9]Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
        (A)  the applicant has exhausted the remedies available in the courts of the State; or
        (B) (i)  there is an absence of available State corrective process; or
           (ii)  circumstances exist that render such process ineffective to protect the rights of the
applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  Id., 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  Id.

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[10]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by

---

[10] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

citing in conjunction with the claim the federal source of law on which he relies or a case deciding

such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.*, 541 U.S. at 32.  This

language, while not part of the Court's holding, provides helpful instruction.  With regard to this

language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for
> petitioners seeking to establish exhaustion.  However, we agree with the district court
> that this language must be "applied with common sense and in light of the purpose
> underlying the exhaustion requirement[:] 'to afford the state courts a meaningful
> opportunity to consider allegations of legal error without interference from the
> federal judiciary.'"  McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting
> Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).
> This is consistent with settled law established by the Supreme Court. . . .  We
> therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more
> than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[11]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation"

requirement.  After Duncan, however, the Eleventh Circuit has taken a more narrow approach.  For

example, in Zeigler v. Crosby, the court held that the habeas petitioner failed to "fairly present" his

juror misconduct claims to the state courts where his brief to the state appellate court did not refer

to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited

in his direct appeal discussed the United States Constitution.  345 F.3d 1300, 1307 (11th Cir. 2003).

The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt

with juror misconduct contained the words:  "Appellant was denied due process and a fair trial. . .

.," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the

Florida Constitution.  *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in

petitioner's state appellate brief were state supreme court cases that made no mention of the United

States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and

---

[11] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law."  McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.  *Id.*

conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review.  *See* O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  Ford v. Georgia, 498 U.S. 411, 424-25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and

expressly state it is relying on state procedural rules to resolve the federal claim.[12]  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate.  *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause and prejudice or a fundamental miscarriage of justice.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  Tower, 7 F.3d at 210.  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  Schlup, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

IV.   PETITIONER'S CLAIMS

A.   Ground One:  "The trial court erred in denying Petitioner's motion to suppress post-Miranda statements.  A denial of Petitioner's constitutional rights assured by the Fifth Amendment to the U.S. Constitution."

_____

[12] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

Petitioner contends the trial court erred in denying defense counsel's motion to suppress Petitioner's statements to law enforcement (doc. 1 at 7–9). Petitioner contends the statements were involuntary under <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966) for two reasons. First, when Officer Bowling initially gave Petitioner an oral <u>Miranda</u> warning, he did not advise Petitioner that he had a right to an attorney before and during questioning, and if he could not afford an attorney, one would be appointed prior to any questioning (*id.* at 8). Petitioner states he invoked his right to remain silent and requested an attorney, at which time Officer Bowling concluded his questioning (*id.*). Petitioner states he then decided to speak with Officer Bowling, and Bowling returned to the interrogation room (*id.*). Petitioner states prior to speaking with Bowling, Bowling failed to obtain Petitioner's written or recorded waiver of his <u>Miranda</u> rights, which Petitioner argues was required to establish a valid waiver (*id.* at 8–9).

Respondent contends both of Petitioner's arguments are procedurally defaulted for federal habeas purposes (doc. 15 at 14–29). Respondent asserts Petitioner never presented his first argument to the state courts; therefore, the claim was not exhausted (*id.* at 14–15). As to Petitioner's second argument, Respondent contends Petitioner failed to present it as a federal claim in his motion to suppress; instead he presented it as a matter of Florida law, and the state court decided it on Florida law grounds (*id.* at 19–25). Therefore, his current federal claim was not exhausted (*id.*). Respondent contends Petitioner may not return to state court to properly present either aspect of his federal claim; therefore, both aspects of the instant federal claim are procedurally defaulted for federal habeas purposes (*id.* at 14–29). Notwithstanding the exhaustion issue, Respondent contends Petitioner has failed to show the state court's denial of the motion to suppress was contrary to or an unreasonable application of <u>Miranda</u> (*id.* at 29–30).

In Petitioner's reply brief, he does not address Respondent's exhaustion arguments; instead, he argues the merits of his Fifth Amendment claim (doc. 26 at 2–3).

The portions of the state court record submitted by Respondent contain a complete record of the proceedings on the suppression issue. In Petitioner's pre-trial motion to suppress, defense counsel alleged:

> 4.     Defendant was subsequently taken into custody, and advised of his <u>Miranda</u> rights, at which time Defendant exercised those rights and asked for a lawyer.

5.      At some point later Investigator Mike Bowling returned to the defendant, who gave a confession to the crime.

6.      Defendant contends that this confession was not knowing and voluntary.
(Ex. B).

At the hearing on the motion to suppress, Officer Michael Bowling was the only witness (Ex. C at 3–7).  He testified he first had contact with Petitioner in an interview room of the police station (*id.* at 4).  Bowling testified he read Petitioner his <u>Miranda</u> rights (*id.* at 4, 7).  He testified he informed Petitioner of his right to remain silent, his right to an attorney, his right not to answer questions, and his right to stop answering questions if he decided to (*id.* at 4–5).  Officer Bowling testified Petitioner indicated he understood the rights Bowling read to him, and he did not have any questions about his rights (*id.* at 5).  Bowling testified Petitioner did not want to talk to him and wanted a lawyer (*id.* at 5, 7).  Bowling testified he terminated the interview and got into his car to leave the police station (*id.* at 5).  He stated as he was leaving the parking lot in his car, he was informed on his police radio that Petitioner wanted to speak with him, so he went back to the interview room (*id.* at 5–6).  Bowling testified he made sure Petitioner understood his rights and made sure Petitioner wanted to speak with him (*id.* at 6).  He testified he reminded Petitioner of his rights, Petitioner appeared to understand his rights, and Petitioner did not have any questions regarding his rights (*id.* at 6, 8).  Bowling testified Petitioner wished to talk to him and did not mention a lawyer (*id.* at 6–7).  He testified he had the ability to record the interview, but Petitioner refused to have his conversation with Bowling tape recorded (*id.* at 8).  Bowling acknowledged that a written waiver form was available in the interview room, but he did not ask Petitioner to sign one (*id.* at 8–9).

After Officer Bowling's testimony, the trial court heard argument from counsel.  Both the prosecutor and defense counsel cited <u>Edwards v. Arizona</u>, 451 U.S. 477, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981) in support of their arguments (Ex. C at 9–11).  In <u>Edwards</u>, the Supreme Court held when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his <u>Miranda</u> rights.  451 U.S. at 484.  The Court additionally held that an accused who has expressed his desire to deal with the

police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police. *Id.* at 484–85.

The prosecutor argued Petitioner waived his rights by voluntarily asking Officer Bowling to come back and reinitiate questioning (Ex. C at 9–10). Defense counsel argued even if Petitioner reinitiated questioning, the State failed to carry its burden of establishing that Petitioner's waiver of his Miranda rights was voluntary, knowing, and intelligent, because there was no evidence of a written waiver or tape recorded waiver after Petitioner initially invoked his right to counsel (*id.* at 10–13). Defense counsel argued three Florida cases in support of his argument, Traylor v. State, 596 So. 2d 957 (Fla. 1992), Jennings v. State, 718 So. 2d 144 (Fla. 1998), and Sliney v. State, 699 So. 2d 662 (Fla. 1997). In Traylor, the Florida Supreme Court addressed the issue of whether a defendant's statements to law enforcement were obtained in violation of state law, specifically, Article I, Sections 9 and 16 of the Florida Constitution. 596 So. 2d at 970–73. In Jennings, the Florida Supreme Court addressed the issue of whether a defendant's statements to law enforcement were obtain in violation of his Miranda rights and his constitutional rights against self-incrimination under the United States Constitution and the Florida Constitution. 718 So. 2d at 147–50. In Sliney, the Florida Supreme Court addressed the issue of whether a defendant's waiver was knowing, intelligent, and voluntary, as well as the separate issue of whether his confession was involuntary. 699 So. 2d at 667–69. In analyzing both issues, the Sliney court cited only state law. *Id.*

The trial court denied the motion to suppress, noting that Petitioner refused to allow the interview with Officer Bowling to be taped (Ex. C at 13–14). The court also noted that under Florida law, the failure to obtain a written waiver was not fatal to the admissibility of a defendant's confession, where the defendant states he understood his rights and was willing to talk to the officer (*id.*).

On direct appeal of his conviction, Petitioner argued the trial court erred in denying the motion to suppress (Ex. H at 12–17). He argued the State had the burden of demonstrating a voluntary and intelligent waiver, and as a corollary to that rule, a valid waiver may not be presumed from a silent record (*id.* at 13–14) (citing Miranda, 385 U.S. at 475). Petitioner argued the State failed to meet its burden in his case, because Officer Bowling's testimony did not include sufficient

information regarding the "totality of the circumstances surrounding the interrogation to establish that the confession was knowing and voluntary" (*id.* at 15–16) (quoting <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986)).  Petitioner further argued that a silent record could not establish waiver (*id.* at 16–17) (citing <u>Miranda</u>, 385 U.S. at 475).

In the State's answer brief, the State argued Petitioner did not preserve the argument that the testimony at the suppression hearing did not include sufficient information regarding the totality of the circumstances surrounding the interrogation to establish that the confession was knowing and voluntary (Ex. I at 12–13).  The State argued defense counsel preserved only that argument that the waiver was invalid because it was not in writing or recorded (*id.* at 13).  The State then argued the waiver and confession were valid because (1) <u>Miranda</u> does not apply to volunteered statements, and (2) the totality of the circumstances reflected a valid <u>Miranda</u> waiver (*id.* at 15–23).

The First DCA affirmed the judgment and sentence per curiam without written opinion (Ex. K).

Based upon this record, the undersigned concludes Petitioner did not fairly present the first argument he makes here, that is, his confession was involuntary because Officer Bowling failed to advise him he had a right to an attorney before and during questioning, and if he could not afford an attorney, one would be appointed prior to any questioning.  This argument was not made in the suppression proceeding before the trial court or on direct appeal to the First DCA.  Therefore, that aspect of Ground One is unexhausted.  Further, a second appeal is not available to present this issue, and an attempt to raise it in a second Rule 3.850 motion would be barred as successive under Rule 3.850(f) of the Florida Rules of Criminal Procedure.  Moreover, Petitioner does not allege cause for his failure to present this argument to the state courts, nor has he shown he is entitled to review under any other recognized exception to the procedural bar.  Therefore, Petitioner is not entitled to federal review of his argument that his confession was involuntary because Officer Bowling failed to advise him he had a right to an attorney before and during questioning, and if he could not afford an attorney, one would be appointed prior to any questioning.

Petitioner did, however, fairly present the second aspect of his claim, that is, that admission of his statements to Officer Bowling violated his Fifth Amendment privilege against self-incrimination because the record contained no written or recorded waiver of his constitutional rights.

Therefore, the court will determine whether Petitioner has shown that the state court's adjudication of that claim was contrary to or an unreasonable application of clearly established federal law.

        1.      Clearly Established Federal Law

In <u>Miranda v. Arizona</u>, the Supreme Court held:

> when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized.  Procedural safeguards must be employed to protect the privilege and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required.  He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.  Opportunity to exercise these rights must be afforded to him throughout the interrogation.  After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement.  But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him.

384 U.S. at 478–79.

    When an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that the accused responded to further police-initiated custodial interrogation even if he has been advised of his <u>Miranda</u> rights.  <u>Edwards</u>, 451 U.S. at 484.  An accused who has expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.  *Id.* at 484–85.

    But even if a conversation taking place after the accused has "expressed his desire to deal with the police only through counsel," is initiated by the accused, where re-interrogation follows, the burden remains upon the prosecution to show that subsequent events indicated a waiver of the Fifth Amendment right to have counsel present during the interrogation.  <u>Oregon v. Bradshaw</u>, 462 U.S. 1039, 1044, 103 S. Ct. 2830, 77 L. Ed. 2d 45 (1983).  The inquiry into whether a defendant's

waiver of effectuation of the rights conveyed in the <u>Miranda</u> warnings is made voluntarily, knowingly, and intelligently has two distinct dimensions:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.  Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.  Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the <u>Miranda</u> rights have been waived.

<u>Moran v. Burbine</u>, 475 U.S. 412, 421, 106 S. Ct. 1135, 89 L. Ed. 2d 410 (1986) (citations omitted).

        2.       Federal Review of State Court Decision

       As previously noted, the trial court denied defense counsel's motion to suppress upon finding that failure to obtain a written or recorded waiver was not fatal to the admissibility of Petitioner's confession (Ex. C at 13–14).  The trial court did not cite any Supreme Court holdings; however, a state court need not cite to, nor even be aware of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them."  <u>Early v. Packer</u>, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002).  The First DCA affirmed the trial court's decision without written opinion.  As previously discussed, when faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See* <u>Gill</u>,  633 F.3d at 1287 (citing <u>Harrington</u>, 131 S. Ct. at 786).  The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *See* <u>Harrington</u>, 131 S. Ct. at 786; *see also* <u>Gill</u>, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

       Here, the record showed that Officer Bowling read Petitioner his <u>Miranda</u> rights, Petitioner indicated he understood them, and Petitioner had no questions regarding his rights.  Petitioner then

invoked his rights, that is, he stated he did not want to talk to Officer Bowling and wanted a lawyer, whereupon Officer Bowling terminated the interview.  It was Petitioner who thereafter initiated further communication with Officer Bowling.  Thus, there is no indication of any impropriety on the part of the authorities, such as intimidation, coercion, or deception.  *See* Moran, 475 U.S. at 421–22; Bradshaw, 462 U.S. at 1046–47; Craig v. Singletary, 127 F.3d 1030, 1039–40 (11th Cir. 1997) (no Edwards violation where suspect, who had unequivocally asserted right to counsel, took it upon himself to seek out police and blurt out confession); Bassett v. Singletary, 105 F.3d 1385, 1387 (11th Cir. 1997) (no Edwards violation where suspect, who had invoked right to counsel, reinitiated discussions by asking as officers were leaving the room: "Well what do you want, anyway?"); Henderson v. Dugger, 925 F.2d 1309, 1313 (11th Cir. 1991) ("Henderson's prior request for counsel is irrelevant as long as he initiated the confession."); United States v. Valdez, 880 F.2d 1230, 1232–34 (11th Cir. 1989) (no Edwards violation where suspect who had previously invoked right to counsel asked in car on way to jail, "Where are we going?" and officer's response led to incriminating statement).

Moreover, as the state court found, the failure to obtain a written or recorded waiver of Petitioner's rights did not violate his Fifth Amendment privilege against self-incrimination.  First, Petitioner requested that his conversation with Officer Bowling not be recorded, and Officer Bowling honored his request.  Second, written or recorded waivers are not required.  *Cf.* Berghuis v. Thompkins, --- U.S. ----, 130 S. Ct. 2250, 2261, 176 L. Ed. 2d 1048 (2010) (waivers can be established absent formal or express statements of waiver); North Carolina v. Butler, 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L. Ed. 2d 286 (1979) (a waiver of Miranda rights may be implied through the actions and words of the person being interrogated).  "The main purpose of Miranda is to ensure that an accused is advised of and understands the right to remain silent and the right to counsel." Berghuis, 130 S. Ct. at 2261 (citations omitted).  Here, among other circumstances, Petitioner's initial invocation of his right to remain silent and to counsel—coupled with Officer Bowling's termination of the interview upon Petitioner's invocation of these rights—well demonstrate Petitioner's understanding of his rights and the consequences of invoking them.  In light of the foregoing, the state court's determination that suppression of Petitioner's statement was not warranted was not contrary to or an unreasonable application of clearly established federal law.

B.    Ground Two: "Ineffective assistance of counsel.  A violation of Petitioner's constitutional rights assured by the Sixth and Fourteenth Amendments to the U.S. Constitution."

In this ground, Petitioner raises three claims of ineffective assistance of counsel.  First, he contends trial counsel was ineffective for failing to object to an erroneous jury instruction regarding the "force" element of robbery (doc. 1 at 7, 10–11).  Second, he argues appellate counsel was ineffective for failing to raise the jury instruction issue on direct appeal (*id.* at 10–11).  Third, Petitioner argues trial counsel was ineffective for failing to pursue a viable defense of misidentification by interviewing or deposing Mr. Vernon Thomas and introducing a picture of Mr. Thomas at trial (*id.* at 12–13).

Respondent states it appears Petitioner exhausted each of his claims by raising his first and third claims in his Rule 3.850 motion and arguing them on appeal of the state circuit court's denial of the motion, and raising his second claim in his state habeas petition (doc. 15 at 31, 36–37, 42–43).  Respondent contends Petitioner failed to show that the state courts unreasonably applied Strickland v. Washington, 466 U.S. 668 (1984) in denying his claims (*id.* at 31–46).

1.    Trial counsel's failure to object to jury instruction on "force" element of robbery

Petitioner contends his trial counsel performed ineffectively by failing to object to the trial court's improperly instructing the jury on the "force" element of robbery.  Petitioner states the trial court erroneously inserted the word "not" as follows:

The taking must be by the use of force or violence or by assault so as to overcome the resistance of the victim, or by putting the victim in fear so that the victim does not resist.  The law does not require that the victim of robbery resist to any particular extent or that the victim offer any actual physical resistance if the circumstances are such that the victim is placed in fear of death or great bodily harm if he or she does not resist.  But unless prevented by fear, there must be some resistance to make the taking one done by force or violence.

(doc. 1 at 10–11).  Petitioner argues the insertion of the word "not" rendered the instruction ambiguous, misleading and confusing (*id.* at 11).  He argues the erroneous instruction rendered the verdict erroneous and unreliable (*id.*)

a.    Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  466 U.S. at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one."  Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms."  Strickland, 466 U.S. at 688–89.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.* at 689.  If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do.'"  Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15).  Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so."  Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is deficient only if it is "outside the wide range of professional competence."  Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").  "[T]here are no 'absolute rules' dictating what reasonable performance is or what line of defense must be asserted."  Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317).  Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'"  *Id.* (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the <u>Strickland</u> standard, Petitioner's burden of demonstrating prejudice is high.  *See* <u>Wellington v. Moore</u>, 314 F.3d 1256, 1260 (11th Cir. 2002).  The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'"  *Id.* (quoting <u>Strickland</u>, 466 U.S. at 693).  However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome.  <u>Strickland</u>, 466 U.S. at 693–94.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law.  <u>Strickland</u>, 466 U.S. at 694–95.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id.* at 695.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  <u>Strickland</u>, 466 U.S. at 698, 104 S. Ct. at 2070; <u>Collier v. Turpin</u>, 177 F.3d 1184, 1197 (11th Cir. 1999).

### b.     Federal Review of State Court Decision

Petitioner raised this ineffective assistance of counsel claim as Ground 1 in his Rule 3.850 motion (Ex. S at 6–9).  In the written order denying Petitioner's motion, the state circuit court correctly identified the <u>Strickland</u> standard as the controlling legal standard (Ex. T at 21–22).  The state circuit court found as fact that the court improperly inserted the word "not" when reading the jury instruction at issue (*id.* at 22–23).  However, the court determined Petitioner failed to demonstrate he was prejudiced by counsel's failure to object to the court's misstatement (*id.* at 23).  The court determined that when the instruction was read in context with the other instructions, it

would be obvious to a reasonable person that the addition of the word "not" was simply human error (*id.*).  The court found as fact that previous to the insertion of the word "not," the jury instruction provided that the victim need not resist in order for the taking of the property to be considered a robbery (*id.*).  The court concluded it would be unreasonable to believe that there would be circumstances where a person would be placed in fear of death or great bodily harm if he or she did **not** resist (*id.*).

The court additionally determined Petitioner failed to show that the jury was confused by the jury instruction and would have rendered a different verdict if correctly instructed (*id.*).  The court found as fact that the record demonstrated the jury asked one question during deliberations—whether a BB gun was considered a weapon (*id.*).  The court found that after much discussion, the trial court gave further instruction to the jury, which was agreed upon by the State and the defense (*id.*).  The court found that the jury obviously could have asked a question about the portion of the instruction regarding resistance of the victim if it had been necessary, but they did not (*id.* at 23–24).  The court further determined that the mistaken addition of the word "not" did not affect the instructions on the elements of the crime (*id.* at 24).  The court concluded that Petitioner failed to demonstrate that either the result of his trial or his direct appeal would have been different if counsel had objected to the court's misstatement in the jury instruction (*id.*).

Petitioner has not rebutted the state court's factual findings with clear and convincing evidence.  Additionally, the findings are supported by the trial transcript (Ex. C at 188–89, 198–07).  Therefore, the court presumes the following facts:  (1) the trial court improperly inserted the word "not" when reading the jury instruction at issue, (2) prior to the insertion of the word "not," the jury instruction provided that the victim need not resist in order for the taking of the property to be considered a robbery, (3) the jury asked one question during deliberations—whether a BB gun was considered a weapon, and (4) if the jury was confused about the instruction regarding resistance of the victim, it could have asked a question about it, but the jury did not.

The context of the trial court's misstatement in the jury instruction was the following:

> The defendant in this case is charged with robbery with a weapon.  Before you can find the defendant guilty of robbery, the State must prove the following four elements beyond a reasonable doubt:  first, that the defendant took the money or property described in the information from the person or custody of Brandi

Crawford; second, force, violence, assault, or putting in fear was used in the course of the taking; third, the property taken was of some value; fourth, the taking was with the intent to permanently or temporarily deprive Brandi Crawford of her right to the property or any benefit from it, or to appropriate the property of Brandi Crawford to his own use or to the use of any person not entitled to it.

. . . .

The taking must be by the use of force or violence or by assault so as to overcome the resistance of the victim, or by putting the victim in fear so that the victim does not resist.  The law does not require that the victim of robbery resist to any particular extent or that the victim offer any actual physical resistance if the circumstances are such that the victim is placed in fear of death or great bodily harm if he or she does <u>not</u> resist.  But unless prevented by fear, there must be some resistance to make the taking one done by force or violence.

(Ex. C at 188–89) (emphasis added).

There is no factual support for Petitioner's argument that the jury was confused by the court's  misstatement.  Considering the misstatement in context with the sentence immediately before it and the sentence immediately after it, it would have been obvious to the listener that the addition of the word "not" was an error.  Further, the surrounding sentences clearly and correctly informed the jury that unless there was evidence that fear prevented the victim from resisting, there must be evidence of resistance to render the taking one done by force or violence.

Additionally, the trial transcript shows that the issue of whether the robber used force or put the victim in fear was not in dispute—all of the evidence showed that the victim did not physically resist because the robber firmly pushed an object, which the victim believed was a firearm, into her side, and she was fearful she would be shot and killed (*id.* at 45–47, 61–62, 67–68).  The victim testified she urinated on herself because she was so frightened (*id.* at 46).

Moreover, as the state circuit court found, the jurors were obviously aware that they could submit a question to the court if they required clarification on any matter, as evidenced by the fact that the jury submitted a question as to whether the BB gun used in the robbery fit the definition of "weapon" (Ex. C at 198–207).  The jury did not request clarification on the issue of force or resistance of the victim during the robbery.

Based upon the record and the facts found by the state post-conviction court, the state court's conclusion, that Petitioner failed to show that the misstatement in the instruction confused the jury or otherwise affected the verdict, was a reasonable application of Strickland.[13]

2.    Appellate counsel's failure to raise jury instruction issue

Petitioner contends appellate counsel performed ineffectively by failing to raise the jury instruction error on appeal (doc. 1 at 10–11).

a.    Clearly Established Federal Law

The proper standard for evaluating a claim of ineffective assistance of appellate counsel is the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984).  See Smith v. Robbins, 528 U.S. 259, 285, 120 S. Ct. 746, 764, 145 L. Ed. 2d 746 (2000) (citation omitted).  As previously noted, the two components of an ineffectiveness claim under Strickland are performance and prejudice, and if an insufficient showing is made as to one, the court need not address the other.  Strickland, 466 U.S. at 697.  The focus of inquiry under the performance prong of the Strickland standard is whether counsel's assistance was "reasonable considering all the circumstances."  Id. at 691.  Appellate counsel who file a merits brief need not (and should not) raise every nonfrivolous claim but, rather, may select from among them in order to maximize the likelihood of success of on appeal.  Jones v. Barnes, 463 U.S. 745, 753–54, 103 S. Ct. 3308, 3314, 77 L. Ed. 2d 987 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). To demonstrate prejudice, Petitioner must show a reasonable probability that, but for his counsel's unreasonable failure to brief a particular issue, Petitioner would have prevailed on appeal.  See Robbins, 528 U.S. at 285.

The Eleventh Circuit has issued several decisions interpreting the Strickland standard with regard to claims of ineffective assistance of appellate counsel.  Appellate counsel cannot be deemed ineffective for failing to raise issues "reasonably considered to be without merit."  United States v.

---

[13] Petitioner's argument that defense counsel's failure to object prejudiced his appeal because the issue was not preserved is unavailing.  First, if defense counsel had objected to the court's misstatement, the court would have sustained the objection and corrected the error, which would have eliminated the issue for appeal.  Additionally, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal) Strickland prejudice is gauged against the outcome of the trial, not of the appeal.  See Purvis v. Crosby, 451 F.3d 734, 739 (11th Cir. 2006) (citing Strickland, 466 U.S. at 694–95).

Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (quoting Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984)).  Additionally, where an issue is not preserved for appellate review, appellate counsel's failure to raise the issue is not constitutionally deficient as it is based on the reasonable conclusion that the appellate court will not hear the issue on its merits.  Diaz v. Sec'y Dep't of Corrs., 402 F.3d 1136, 1142 (11th Cir. 2005); Atkins v. Singletary, 965 F.2d 952, 957 (11th Cir. 1992); Francois v. Wainwright, 741 F.2d 1275, 1285–86 (11th Cir. 1984).  Moreover, the arguments omitted from the appeal must have been significant enough to have affected the outcome of the appeal.  Nyhuis, 211 F.3d at 1344 (citing Miller v. Dugger, 858 F.2d 1536, 1538 (11th Cir. 1988)).

    b.  Federal Review of State Court Decision

    In Petitioner's state habeas petition, he argued appellate counsel was ineffective for failing to argue that fundamental error occurred at trial when the trial court gave a misleading and incorrect jury instruction on the "taking" element of robbery (Ex. Q).  The First DCA denied the petition on the merits (Ex. R).  The state court did not cite Strickland; however, as previously noted, a state court need not cite to, nor even be aware of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early, 537 U.S. at 8.

    The First DCA's decision could have been supported by the argument that appellate counsel's failure to brief an issue that was not preserved at trial was not unreasonable.  Where an issue is not preserved at trial, appellate counsel's failure to raise it is not deficient.  See Diaz, 402 F.3d at 1142; Atkins, 965 F.2d at 957; Francois, 741 F.2d at 1285–86.  Further, under the circumstances of this case, the jury instruction error was not fundamental error under Florida law. See State v. Delva, 575 So. 2d 643, 645 (Fla. 1991) (failing to instruct on an element of the crime over which the record reflected there was no dispute is not fundamental error; therefore, there must be an objection to preserve the issue for appeal) (citations omitted).  Therefore, appellate counsel was not deficient for failing to raise it as such.  Petitioner has failed to demonstrate that the First DCA's denial of his ineffective assistance of appellate counsel claim was contrary to or an unreasonable application of Strickland.  Therefore, he is not entitled to federal relief on this claim.

    3.  Trial counsel's failure to pursue misidentification defense

    Petitioner asserts he repeatedly requested that defense counsel pursue a misidentification defense by presenting evidence that would establish a reasonable doubt that Petitioner was the

robber (doc. 1 at 12).  He states defense counsel should have recognized that there were no latent fingerprints from Petitioner at the crime scene, and the only fingerprint was that of Mr. Vernon Thomas (*id.*).  Petitioner states defense counsel should have questioned or deposed Mr. Thomas, but counsel did not (*id.*).  Additionally, counsel should have introduced a picture of Mr. Thomas at trial to show the jury that Petitioner's eyes and Mr. Thomas's eyes were similar (*id.*).  He states this evidence would have created doubt as to the victim's identification of Petitioner as the robber (*id.* at 12–13).  Petitioner states counsel brought a picture of Mr. Thomas to court, but did not use it, and when Petitioner asked him why he did not, counsel stated "I didn't think we needed it" (*id.* at 13).

Petitioner raised this ineffective assistance of counsel claim as Ground 2 in his Rule 3.850 motion (Ex. S at 9–11).  The state circuit court found as fact that the victim was unable to give a complete description of the perpetrator; she testified mainly about remembering the perpetrator's eyes and that he had facial hair (Ex. T at 24).  The court found that defense counsel pursued a misidentification defense by bringing to light, through cross-examination of the victim, that the victim was unable to identify the color of the perpetrator's eyes, the color of his hair, the type of facial hair, or the type of shoes worn by the perpetrator (*id.* at 25).  Despite counsel's efforts, the victim never wavered from her identification of Petitioner as the perpetrator (*id.*).  The court found that defense counsel also cross-examined Investigator Jennings, who processed the latent fingerprints from the crime scene, and elicited testimony that Petitioner's fingerprints were not found, even though Vernon Thomas's fingerprints were identified at the scene (*id.*).  Additionally, the state court concluded it was highly unlikely that counsel's failure to introduce the photograph affected the verdict, in light of Petitioner's confession to the crime and his informing law enforcement where they could find the BB gun used in the robbery and the currency from the robbery (*id.* at 25–26).

The trial transcript demonstrates that the theory of the defense was that despite Petitioner's confession, which defense counsel argued was unreliable, there was no physical evidence linking Petitioner to the robbery, and Petitioner was misidentified as the robber.  This is evidenced by defense counsel's cross-examination of the victim, wherein counsel attempted to cast doubt on the certainty and reliability of the victim's identification (Ex. C at 52–66).  The focus of defense counsel's cross-examination of the other witnesses, all of whom were law enforcement officers, was

the vagueness of the victim's identification of the robber to police (*id.* at 71–73), the unreliability of police procedures used to track the robber from the location of the robbery to a residence where Petitioner was staying (*id.* at 83–91), the absence of Petitioner's fingerprints at the scene and the presence of fingerprints of other individuals, including Vernon Thomas (*id.* at 121–23), and the reliability of Petitioner's confession (*id.* at 130–35).   Additionally, defense counsel's closing argument demonstrates that the theory of the defense was the absence of physical evidence linking Petitioner to the robbery, the unreliability of Petitioner's confession, and that Petitioner had been misidentified as the robber (*id.* at 152–69, 179–87).   In light of this record, Petitioner's allegation that counsel was deficient for failing to pursue a misidentification defense is baseless.

As to counsel's failure to admit a picture of Vernon Thomas into evidence, Petitioner offered nothing but speculation to support his assertion that his and Mr. Thomas's eyes looked similar. Petitioner's speculation is insufficient to suggest a reasonable probability that the result of his trial would have been different if counsel had used Mr. Thomas's photograph at trial, especially in light of Petitioner's confession to the robbery and his informing law enforcement where they could find the weapon and the proceeds from the robbery.   Petitioner therefore failed to demonstrate that the state court unreasonably applied <u>Strickland</u> in denying this claim.

> C.      Ground Three: "The written sentence does not comport with the oral pronouncement and the oral pronouncement is not statutorily authorized and the sentence is illegal."

In Ground Three, Petitioner argues the sentence orally pronounced by the sentencing court was unauthorized under Florida law and, therefore, illegal (doc. 1 at 14–16).   Petitioner contends the sentence was unauthorized because the court imposed three separate sentences for the single robbery:   (1) fifteen years for robbery, (2) fifteen years for his being a prison releasee reoffender ("PRR"), and (3) twenty-five years for his being a habitual felony offender ("HFO") (*id.*).   Petitioner states it is well established under Florida law that imposition of a HFO sentence "negates" a sentence imposed pursuant to Florida's Criminal Punishment Code, and in his case the court orally imposed both (*id.*).   He states the court lawfully imposed the maximum sentence under the CPC, which equaled the statutory maximum of fifteen years, and lawfully imposed the concurrent 15-year PRR sentence, but then unlawfully imposed the 25-year HFO sentence (*id.*).   He argues his sentence violated his constitutional rights to due process and equal protection (*id.* at 16).

Respondent contends Petitioner's claim presents only a matter of state law, which is not cognizable in federal habeas (doc. 15 at 47–51).  Respondent further argues the state court's denial of this claim was based upon its interpretation of state law, which binds this court (*id.* at 50–51).

Federal habeas relief is available to correct only those injuries resulting from a violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67–68, 112 S. Ct. 475, 479–80, 116 L. Ed. 2d 385 (1991) (errors that do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief); Wainwright v. Goode, 464 U.S. 78, 104 S. Ct. 378, 78 L. Ed. 2d 187 (1983); Barclay v. Florida, 463 U.S. 939, 958–59, 103 S. Ct. 3418, 3429, 77 L. Ed. 2d 1134 (1983) ("Mere errors of state law are not the concern of this court . . . unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution.") (citations omitted); Engle v. Isaac, 456 U.S. 107, 102 S. Ct. 2976, 73 L. Ed. 2d 1361 (1981); Carrizales v. Wainwright, 699 F.2d 1053 (11th Cir. 1983).   Questions of state law and procedure "rarely raise issues of federal constitutional significance. [A] state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." Tejada v. Dugger, 941 F.2d 1551 (11th Cir. 1991) (quoting Carrizales, *supra*).  "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process." Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988).  In Branan v. Booth, for example, the Eleventh Circuit reaffirmed that "in the area of state sentencing guidelines in particular, we consistently have held that federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures." *Id.* at 1508 (citing Jones v. Estelle, 622 F.2d 124, 126 (5th Cir. 1980)).  State law issues may be reviewed in this federal forum only when the alleged errors were "so critical or important to the outcome of the trial to render the entire trial fundamentally unfair." Tejada, 941 F.2d at 1560.  The Supreme Court "ha[s] defined the category of infractions that violate 'fundamental fairness' very narrowly." Estelle, 502 U.S. at 352.

Here, Petitioner's claim that his sentence was not authorized under Florida law involves purely a state law issue.  It does not have true federal constitutional dimension.  Therefore, federal habeas review is not available.

Moreover, Petitioner's claim is without merit.  Petitioner raised his sentencing claim in his first Rule 3.800(a) motion (Ex. M).  The state court denied the claim on the following grounds:

> The instant motion is based upon two interconnected claims:  1) the written judgement does not comport with the oral pronouncement, and 2) the oral pronouncement results in an illegal sentence.   The Defendant misreads the record.[FN 1]  Although the Court originally sentenced the Defendant to 15 years for the robbery, 15 years as a prison releasee reoffender ("PRR"), and 25 years as an habitual felony offender ("HFO"), the Court eventually revised the sentence to include only the 25- year HFO sentence, with 15 years as a PRR.  This sentence was repeated by the State Attorney and acknowledged by Defendant's counsel.  Such a sentence is a legal sentence.  *See* Grant v. State, 770 So. 2d 655 (Fla. 2000).

[FN 1] *See* 09/22/03 Sentencing Hearing Transcript (attached) (Ex. N).

The transcript of the sentencing hearing supports the state court's finding that although the court originally sentenced Petitioner to fifteen years for robbery, fifteen years as a PRR, and twenty-five years as an HFO, the court eventually revised the sentence to include only the 25-year HFO sentence, with a concurrent 15-year minimum PRR sentence (Ex. E).  This is the sentence reflected in the written judgment and sentence (Ex. F).

Additionally, this court must abide by the state court's interpretation of state law.   *See* Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975).  Therefore, this court is bound by the state court's determination that Florida law permits a concurrent HFO and PRR sentence where the HFO sentence is longer than the PRR sentence.  *See* Grant v. State, 770 So. 2d 655, 657–58 (Fla. 2000); Smith v. State, 754 So. 2d 100, 101 (Fla. 1st DCA 2000).

Moreover, liberally construing Petitioner's claim as asserting a double jeopardy violation based upon the imposition of both HFO and PRR sentences, which is the claim Petitioner asserted in his Rule 3.800(a) motion, Petitioner has failed to demonstrate that the state court's denial of his claim was contrary to or an unreasonable application of clearly established federal law.

The double jeopardy clause of the United States Constitution "protects against multiple punishments for the same offense."  North Carolina v. Pearce, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969).  This protection is "designed to ensure that the sentencing discretion of the

courts is confined to the limits established by the legislature." *Id.* at 499.  In <u>Missouri v. Hunter</u>, the Supreme Court held that with respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.  459 U.S. 359, 366–69, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983).

Relevant to the question of legislative intent, section 775.082(9)(a) 3. of the Florida Statutes, provides, in pertinent part, "[u]pon proof from the state attorney that establishes by a preponderance of the evidence that a defendant is a prison releasee reoffender . . . such a defendant is not eligible for sentencing under the sentencing guidelines and must be sentenced"  in accordance with the Prison Releasee Reoffender Act.  *See* Fla. Stat. § 775.082(9)(a) 3. (2002).  Pursuant to section 775.082(3)(c), the sentence provided for a felony of the second degree (the degree of Petitioner's offense) is "a term of imprisonment not exceeding 15 years." *See* Fla. Stat. § 775.082(3)(c) (2002). However, section 775.082(9)(c) provides, "[n]othing in this subsection shall prevent a court from imposing a greater sentence of incarceration as authorized by law, pursuant to s. 775.084 or any other provision of law.'" *See* Fla. Stat. § 775.082(9)(c) (2002).  Importantly, section 775.082(9)(d), reflects the intent of the Florida Legislature "that offenders previously released from prison who meet the criteria in paragraph (a) be punished to the fullest extent of the law <u>and</u> as provided in this subsection."  *See* Fla. Stat. § 775.082(9)(c) (2002) (emphasis added).  Section 775.084 defines "habitual felony offender" and provides that a court may sentence an HFO to thirty (30) years, in the case of a second degree felony.  *See* Fla. Stat. § 775.084(4)(a) 2. (2002).

The Florida Supreme Court held that the legislative intent expressed in these provisions of the Florida statutes is clear:

> [W]hen the [PRR] Act is properly viewed as a mandatory minimum statute, its effect is to establish a sentencing "floor."  If a defendant is eligible for a harsher sentence "pursuant to [the habitual offender statute] or any other provision of law," the court may, in its discretion, impose the harsher sentence.

<u>Grant v. State</u>, 770 So. 2d 655, 658 (Fla. 2000) (quoting <u>State v. Cotton</u>, 769 So. 2d 345, 354 (Fla. 2000)).  The <u>Grant</u> court held that the imposition of an applicable longer concurrent term of imprisonment with a PRR mandatory minimum sentence does not violate the double jeopardy clause of the federal Constitution.  *Id.*

Based upon the sound reasoning of the Florida Supreme Court in <u>Grant</u>, upon which the state circuit court relied in denying Petitioner's double jeopardy claim, Petitioner failed to show that imposition of a 25-year sentence under the HFO statute and a mandatory minimum 15-year sentence under the PRR statute violated the constitutional prohibition against double jeopardy.  Therefore, the state court's denial of his double jeopardy claim was not contrary to or an unreasonable application of clearly established federal law.

V.      CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Kenneth S. Tucker is substituted for Edwin G. Buss as Respondent.

And it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 28<u>th</u> day of September 2011.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**